**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANTHONY VOLNER, | ) |
| | ) |
| PLAINTIFF | ) |
| | ) |
| v. | ) CASE NO. CIV 11-003-JHP |
| | ) |
| UNION PACIFIC RAILROAD COMPANY, | ) |
| | ) |
| DEFENDANT | ) |

## ORDER AND OPINION

Now before the Court is Defendant's Motion for Summary Judgment on Causation (Doc. No. 37). For the reasons set forth below, the motion is GRANTED.

### *BACKGROUND*

**A. Factual Background**

Anthony Volner ("Volner") worked for Union Pacific Railroad Company ("Union Pacific") from July 9, 2004 until January 28, 2010 as a track laborer (trackman), a crane helper, a crane operator, and finally as a trackman on a section gang. Volner claims to have injured his neck sometime in November of 2009. Volner could not recall a specific activity or act that caused his neck pain. Volner did not identify a defective tool that caused his injury, nor did he identify a specific working condition that caused his injury. Volner filed a personal injury report on January 12, 2010, but could not specify the date he was injured, where he was injured, the specific activity he was engaged in when he was injured, what specifically caused his injury, or what tools specifically caused his injury.

Volner received treatment from Patrick Han, M.D., a board certified neurosurgeon. Volner never complained to Dr. Han about any specific activity with Union Pacific that aggravated his back. Dr. Han could not recall if Volner told him of a specific duty that he was doing when his injury occurred. Dr. Han believed his job was to fix Volner's problem, not ascertain what caused it. As such, Dr. Han never did any studies regarding the exposures or conditions that Volner would have experienced while working at Union Pacific, nor did he find out what equipment Volner used. Volner only told Dr. Han that he pushed and pulled up to 500 pounds. Union Pacific retained biomechanical expert Greg G. Weames who completed an

evaluation and analysis of Volner's specific job tasks as a crane operator and trackman, and determined that these job tasks do not present an increased risk for the development of cervical spine degeneration suffered by Volner.

**B. Procedural History**

On January 3, 2011, Anthony Volner ("Volner") sued Union Pacific alleging that Union Pacific failed to provide safe tools and equipment; allowed for unsafe work practices; failed to test and inspect the workplace and equipment to determine ergonomic adequacy; assigned Volner to work situations and conditions likely to cause injury or aggravate his prior injury; failed to warn Volner of ergonomic hazards; failed to medically examine employees for ergonomic injuries; required Volner to engage in repetitive motion duties and work outside of any recognized safety level and especially that recognized in the revised NIOSH standards; violated the 1971 OSHA; required Volner to perform duties in a repetitive manner; required Volner to perform repetitive and arduous physical activity; and assigned Volner to duties that were beyond his physical capacity. Volner seeks a judgment against Union Pacific for damages in excess of $75,000.00. Volner did not identify any expert witnesses on his Initial Witness List, nor did Volner identify or disclose any expert witnesses in accordance with Federal Rule of Civil Procedure 26(a)(2)(D)(I).

Union Pacific filed the instant motion for summary judgment on November 3, 2011, arguing that based on the undisputed facts: (1) Volner had no evidence of any negligence on the part of Union Pacific; and (2) Volner had no expert testimony to link his work at Union Pacific to any of his claimed injuries.

*DISCUSSION*

**A. Summary Judgment Standards**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In making the summary judgment determination, the Court examines the

factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma,* 165 F.3d 1321, 1326 (10th Cir.1999).

Under Rule 56(c), the moving party has the initial responsibility to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If this requirement is met by the moving party, the burden shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

If the non-moving party can prove the existence of a genuine issue of material fact, the motion is defeated. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U .S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

**B. Negligence of Union Pacific.**

In order to recover under the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq*. ("FELA"), a Plaintiff must prove:

1. That the defendant is a common carrier by railroad engaged in interstate commerce;
2. That the injured plaintiff was employed by defendant with duties furthering such commerce;
3. That the injuries were sustained while the injured plaintiff was so employed; and,
4. That the injuries were the result of the defendant's negligence.

*Lowery v. Illinois Central Gulf Railroad Co.*, 891 F.2d 1187, 1190-1191 (5th Cir. 1990). Although the FELA does not impose strict liability on employers, the plaintiff must still prove the traditional common-law elements of negligence, *i.e.*: duty, breach, foreseeability, and causation. *Adams v. CSX Transportation, Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). The basis of the employer's liability is its negligence, not the mere fact that the injury occurred. *Kaminski v. Chicago River & Indiana Railway Co.*, 200 F.2d 1, 3 (7th Cir. 1953*); Atlantic Coastline Railway Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951). Except as otherwise provided in the Act, liability is determined by common-law principles which define negligence as the lack of due care

in light of the circumstances, that is, the doing of acts which a reasonably prudent person would not have done, or the failure to do what a reasonably prudent person would have done. *Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 166 (2007); *Atlantic Coastline Railway Co.*, 189 F.2d at 527. The test of liability in this case is negligence, and thus the burden of proving the defendant's negligence is on the plaintiff. *Kaminski*, 200 F.2d at 3.

Although under *Rogers v. Missouri Pacific Ry. Co.*, 352 U.S. 500, 506 (1957) and *CSX Transportation, Inc. v. McBride*, 131 S.Ct. 2630 (2011), a "relaxed" standard of causation applies to Volner's FELA action, the relaxed standard of proof applicable to the causation element does not lessen a plaintiff's burden with regard to the other elements of negligence. *See, e.g. Van Gorder v. Grand Trunk W. R.R., Inc.,* 509 F.3d 265, 269 (6th Cir. 2007). Therefore, *if* Union Pacific was negligent, Volner need only show that its negligence caused, in whole or in part, his injury. The relaxed causation standard under FELA does not affect his obligation to prove that Union Pacific was negligent in the first place. Pursuant to the FELA, Union Pacific has a duty to use reasonable care in furnishing its employees with a safe place to work. *Atlantic Coastline Railway Co. v. Craven*, 185 F.2d 176, 178 (4th Cir. 1950). The employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition. *Ackley v. Chicago & Northwestern Transportation Co.*, 820 F.2d 263, 267 (8th Cir. 1987). If an employee claims that he or she was injured as a result of a defect in the premises or equipment, they must show that a defect occurred and that the defendant had notice of the defect, either actual or constructive. *St. Louis R. Co. v. Ingram*, 124 Ark. 298, 187 S.W. 452 (1916), *aff'd* 244 U.S. 647 (1917).

Testimony describing the physical demands of a particular job is not evidence that the job was unreasonably unsafe or that the railroad required an employee to perform that job in an unreasonably unsafe manner—it only demonstrates that the plaintiff may have experienced difficulty performing the normal functions of the job. *Lewis v. CSX Transp., Inc.*, 778 F.Supp.2d 821, 837 (S.D. Ohio 2011); *Parson v. CSX Transp., Inc.,* 714 F.Supp.2d 839, 843–44 (N.D. Ohio 2010); *Tootle v. CSX Transp., Inc.,* 746 F.Supp.2d 1333, 1338 (S.D. Ga. 2010); *Zarecki v. Nat'l R.R. Passenger Corp.,* 914 F.Supp. 1566, 1572 (N.D. Ill. 1996). *A* railroad has a duty to assign employees to work for which the employee is reasonably suited. *Rivera v. Union Pac. R.R. Co., 378 F.3d 502, 507 (5th Cir. 2004).* A railroad breaches that duty if it negligently assigns its employee

4

to perform work beyond his or her physical capacity-that is, if the railroad knew or should have known of the employee's diminished work capacity and, in spite of that knowledge, the railroad continued to assign the employee to tasks that it knew or should have known would aggravate his or her physical condition. *Id.* A railroad is not negligent in continuing to assign an employee work unless the evidence shows that the employee attempted to transfer jobs or informed his employer that the work was causing him problems. *Emmons v. Southern Pac. Transp. Co.*, 701 F.2d 1112, 1120 (5th Cir. 1983).

In the instant case, although Volner claims to have injured his neck sometime in November of 2009, Volner could not recall a specific activity or act that caused it. Volner cannot identify either a defective tool that caused his injury, or a specific working condition that caused his injury. Likewise, Volner's Report of Personal Injury or Occupational Illness filed on January 12, 2010 does not specify the date he was injured, where he was injured, the specific activity he was engaged in when he was injured, what caused his injury, or what tools specifically caused his injury. Volner neither demonstrates a defect in the premises or equipment, nor establishes that Union Pacific had notice of the defect, either actual or constructive. Volner does not claim that he attempted to transfer jobs to a less taxing job, or that he ever informed Union Pacific that work was causing him problems. Likewise, biomechanical expert Greg G. Weames' uncontradicted evaluation and analysis of Volner's specific job tasks as a crane operator and trackman, establishes that Volner's job tasks did not present an increased risk for the development of cervical spine degeneration. He points to no act of Union Pacific which a reasonably prudent person would not have done, nor does he identify how Union Pacific failed to do what a reasonably prudent person would have done. Therefore, as a matter of law, Volner presents no evidence of negligence on the part of Union Pacific.

**C. Specific Causation.**

Volner's lack of testimony identifying a connection between some act of negligence by Union Pacific and his injury also merits judgment in Union Pacific's favor. Nothing in FELA alters the accepted fact that unless the connection between the negligence and the injury is a kind that would be obvious to laymen, expert testimony is required. *Brooks v. Union Pacific R.R. Co.,* 620 F.3d 896, 900 (8th Cir. 2010). Expert testimony is unnecessary in cases where a layperson can understand what caused the injury. *See Moody v. Maine Cent. R.R. Co.,* 823 F.2d

693, 695 (1st Cir. 1987). But when there is no obvious origin to an injury and it has "multiple potential etiologies, expert testimony is necessary to establish causation." *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 46–47 (2d Cir. 2004); *accord Claar v. Burlington N.R.R. Co.,* 29 F.3d 499, 504 (9th Cir. 1994). In the FELA context, federal courts have found that expert testimony establishing specific causation is necessary for cumulative trauma disorders. *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010). Indeed, the Seventh Circuit emphasized that "the law demands more than a casual diagnosis that a doctor may offer a friend or acquaintance outside the office about what could be causing his aches and pains." *Myers*, 629 F.3d at 644 (7th Cir. 2010). In *Myers*, the Seventh Circuit upheld summary judgment noting that: "[t]he physicians' testimonies made it clear that they were offering a general medical opinion about his condition at the time of treatment and an assumption that it developed over time at the Railroad. Other than common sense, there was no methodology to their etiology." *Id.* at 645. As in *Myers*, Volner offers nothing to establish a link between his injuries and his work at Union Pacific. To the contrary, Dr. Han specifically refused to offer an opinion on what caused Volner's injury. Thus, as a matter of law, Volner has failed to present competent expert testimony to support the causation element of his FELA claim.

Accordingly, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED this 6th day of December, 2011.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma